[No. 2127, Aug. 5. 1918.]
## STATE v. JORDI.

### SYLLABUS BY THE COURT.

Officers and members of the mounted police force appointed under authority of chapter 9, Laws 1905, as amend-

ed by chapter 83, Laws 1912, are authorized to carry arms, and are not subject to the provisions of the deadly weapon act while commissioned as officers or men of such force.

Roberts, J., dissenting.

Appeal from District Court, San Miguel County; Leahy, Judge. Reversed with instructions.

ELMER E. VEEDER, of Las Vegas, for appellant.

Officers and members of mounted police are on duty at all times and are authorized to carry arms as peace officers.

Secs. 5411, 5413, 5414, 5420, 5412, 1709, Code 1915; Gonzales v. State, 110 S. W. 740; Jones v. State, 65 S. W. 52; Jenkins v. State, 82 S. W. 1036; Guise v. Terr., 7 N. M. 228.

HARRY L. PATTON, Attorney General, and MILTON J. HELMICK, Assistant Attorney General, for the State.

Guise v. Terr., 7 N. M., 228, does not apply to officials such as mounted policemen.

Such men have no right to carry arms.

State v. Rogers, 16 Lea. 510; 40 Cyc. 865.

### STATEMENT OF FACTS.

Jose Jordi, in the district court of San Miguel county, N. M., was indicted on the charge of unlawfully carrying a deadly weapon, to wit, a pistol, about the town of Las Vegas. A jury was waived, and the case submitted to the district court upon the following agreed statement of facts:

"That on the 3d day of January, A. D. 1917, the defendant held a commission as mounted policeman as provided for in the statutes of New Mexico; that on said date he arrested one Fe'ipe M. Chacon and turned said Chacon over to the sheriff of San Miguel county, after making such arrest; that at the time of making such arrest the said Jordi had no warrant in his possession for the arrest of

said Chacon, nor did he have any other criminal warrant in his possession at said time.

"That at the time of making said arrest the defendant, Jordi, was carrying a deadly weapon, to wit, a pistol, and that said arrest was made within the limits of the settlement of the town of Las Vegas, in the county of San Miguel, of the state of New Mexico.

"The defendant claims that he had a right to carry said deadly weapon under the statutes of New Mexico governing the mounted police force."

The trial court found the defendant guilty and assessed against him a fine of $50 and costs, from which judgment this appeal was prayed.

### OPINION OF THE COURT.

HANNA, C. J. The sole question involved in this appeal is whether a member of the mounted police force of this state has authority at all times to carry arms. The mounted police force was created by chapter 9, Laws 1905, appearing as section 5411 et seq., Code 1915, authorizing the governor of the then territory to muster into the service, for the protection of the frontier of the territory and for the preservation of the peace and the capture of persons charged with crime, a company of New Mexico mounted police, to consist of one captain, one lieutenant, one sargeant, and not more than eight privates. Section 3 of the act in question provided that the men should be furnished by the territory with the most effective and approved breechloading rifles. Section 4 of the act provided that each member of the company should furnish himself with a suitable six-shooting pistol (army size), and all necessary accoutrements and camp equipage. By section 11 of the act it was provided that all members of such company shall have full power to make arrests of any criminals in any part of the territory and upon arrest of such criminals shall deliver the same over to the peace officer of the county where the crime is committed. By an amendment to this act, section 13 of chapter 83, Laws 1912 (section 5412, Code 1915), the governor was authorized whenever in his judgment he deemed it nec-

essary to appoint additional members of the force, while the necessity for such additional officers existed. Subsequent to the amendment referred to, the legislature discontinued appropriations for the mounted police force, with the result that there has been no paid force operating under the authority of the law in question until recently, when, through the action of the State Council of Defense, the force was re-established.

No authority of any value in the consideration of this case has been cited for our consideration, and it appears to be solely a question of construction of our statutes upon the subject. It is apparent that, at the time of the passage of the first act at the session in 1905, the mounted police force was to be stationed "at Santa Fe or other points in the state to be designated by the governor and shall at all times be under his direction," indicating that the force was a permanent force to be on active and constant duty with "full power to make arrest of criminals in any part of the state." It was directed that they be armed with rifles to be furnished by the state and a six-shooting pistol to be furnished by themselves. There is certainly an implied power conferred by this statute to carry these arms, else the legislature must be held to have been speaking idly or foolishly. To hold that these officers are subject to the provisions of the deadly weapon statute (section 1701 et seq., Code 1915) prohibiting any person carrying a deadly weapon in or about the settlements of this state, except as provided for by the act, would be, to some extent at least, to render the mounted police force act ineffective and useless, subjecting every member of that force to prosecution for violation of the deadly weapon act. The argument that because the deadly weapon act does not except the mounted police officers is ineffective, because at the time the deadly weapon act was passed the mounted police force was not provided for and the legislature in the act last enacted, that providing for the mounted police force, must be held to intend that other statutes in conflict therewith be repealed to the extent

of the conflict, and implied authority to carry arms which we see in the mounted police force act must necessarily be held to be a modification of the deadly weapon act.

We also see little or no importance in the argument that the mounted police force has ceased to be a permanent force and is now consisting of special or temporary officers only, appointed at the pleasure of the governor. We must construe the mounted police force act from the standpoint of what was intended at the time of its adoption. Any change in conditions subsequent thereto is of no moment so far as this court is concerned. It is the intent of the legislature at the time of the passage of the act which we must strive to determine. If that intent is no longer applicable to present conditions, it is a matter for the legislature to correct and not for this court to consider.

It is urged that the case of William H. Guyse v. Territory, 7 N. M. 228, 34 Pac. 295, is an authority in point. That case was based on an earlier statute now appearing as section 1709, Code 1915, and the court held that the act did not authorize sheriffs and other officers to carry deadly weapons any more than private citizens. Subsequent to the opinion of the territorial Supreme Court in that case, an act was passed now appearing as section 1258, Code 1915, authorizing sheriffs to carry deadly weapons and providing that they should be considered at all times in the discharge of their respective offices. Both acts, however, were passed prior to the mounted police statute, and in our view of the matter the case referred to is not in point.

We conclude that officers and members of the mounted police force appointed under authority of chapter 9, Laws 1905, as amended by chapter 83, Laws 1912, are authorized to carry arms and are not subject to the provisions of the deadly weapon act while commissioned as officers or men of such force.

For the reasons stated, the judgment of the district court is reversed and the cause remanded, with instructions to dismiss the indictment, and it is so ordered.

PARKER, J., concurs.

ROBERTS, J. (dissenting). The single question involved in this appeal is whether or not a mounted police officer appointed and acting under the provisions of chapter 104, art. 12, Code 1915, has a right to carry a deadly weapon in or about the settlements of this state. Appellant was a mounted police officer, not serving on the regular force, but holding an appointment from the governor under the provisions of the statute which gives the chief executive the power to appoint additional members temporarily of such police force. He carried a pistol on his person in the city of Las Vegas at the time charged in the indictment and made an arrest of an individual charged with violating the laws of the state. The case was submitted to the court upon an agreed statement of facts, and appellant was adjudged guilty and fined $50.

Appellant concedes there is no specific authorization by statute for the carrying of a deadly weapon about the settlements of the state by a mounted police officer, but he contends that such an officer is impliedly so authorized by sections 5413 and 5414, Code 1915. The first section named provides that members of the mounted police shall be furnished with the most effective and approved breech-loading rifles, and the next section specifies equipment with which each member of the mounted police company shall be provided. Each member is required to furnish himself with "a suitable horse, six-shooting pistol, army size, and all necessary accoutrements and camp equipage." Section 5420, Code 1915, gives to members of said company the power to make arrests of criminals in any part of the state. Section 1701, Code 1915, makes it an offense for any person to carry a deadly weapon, either concealed or otherwise, in or about the settlements of this state, with certain exceptions: mounted police officers not being in-

cluded in the exceptions. Section 1709, Code 1915, authorizes sheriffs and constables of the various counties. and marshals and police of the cities and towns and their legally appointed deputies to carry weapons' when in the actual charge, pursuit, or search of a person charged with an offense against the laws of this state, in the legal discharge of the duties of their respective offices, or when such carrying may be necessary for the public safety. By section 1258, Code 1915, it is provided that all sheriffs shall at all times be considered as in the discharge of their duties and be allowed to carry on their persons arms, not concealed. The mounted police force was created for the protection of the frontier of the state and for the preservation of the peace and the capture of persons charged with crime. Section 5411, Code 1915. It is no offense to carry a deadly weapon except within the settlements of the state.

"The only exceptions to a statute making penal the carrying of weapons are those specifically stated therein., as the courts will neither introduce new exceptions nor extend, by construction, those specifically mentioned." 40 Cyc. 857. In Guyse v. Territory, 7 N. M. 228, 34 Pac. 295, it was held that a sheriff, constable, or other peace officer has no more right to carry deadly weapons than a private citizen except when the same is done in the proper and necessary discharge of his official duties. Section 1258, supra, was evidently enacted in view of this decision.

In 40 Cyc. 865, it is said:

"An exception of certain named officers and other peace officers includes only those named and other executive officers of the same class, and' such statutory exceptions certainly apply only when the officer is actually engaged in the discharge of his official duties."

A member of a mounted police force is merely a peace officer of the state with no special prerogatives or privileges. The legislature has not authorized such an officer to carry deadly weapons in the settlements of the state, unless such implied authority exists by reason of

the fact that he is required to provide himself with a pistol. I do not believe the court would be justified in holding that the mere fact that the statute required him to provide such weapon, he was thereby authorized to carry it in the settlements of the state. He would, like any other citizen, have a right to carry the weapon while traveling. While on duty along the frontier and traveling through the country searching for criminals, he would have a right to carry the weapon while not within the settlements of the state. The rule laid down in Guyse v. Territory, supra, is clearly applicable to the case of appellant.

For the reasons stated, I cannot concur in the majority opinion.

[No. 2191, July 16, 1918.]
[Rehearing Denied Aug. 6, 1918.]
STATE v. BLANCETT.